91 F.3d 146
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
CARTHAGE, KNIGHTSTOWN & SHIRLEY RAILROAD, Plaintiff-Appellant,
v.
JEFFERSON SMURFIT CORPORATION and Container Corporation of
America, Defendants-Appellees.
 No. 95-3779.
 United States Court of Appeals, Seventh Circuit.
 Argued May 21, 1996.
Decided July 1, 1996.
 
 Before CUMMINGS, MANION and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Defendant Container Corporation of America ("Container") is an Illinois Corporation that owns and operates a paper mill in Carthage, Indiana. In 1940, it entered into a "Side Track Agreement" with the Penn Central Railroad Corporation ("Penn Central"), providing that Penn Central would be given an easement to place and use railroad tracks on Container's land to service the mill. The tracks and related equipment remained Penn Central's property. The Agreement also contained a termination clause:
 
 
 2
 This agreement shall terminate thirty (30) days after written notice by either party to the other to that effect.... Within thirty (30) days after the termination as aforesaid of this agreement, either party may remove from the premises of the other all property belonging to it under this agreement and all property not so removed shall belong to the party upon whose premises the property remains.
 
 
 3
 On December 31, 1984, Penn Central sold all of its rights to the tracks in the Carthage area to another corporation, which then sold those rights to plaintiff Carthage, Knightstown & Shirley Railroad ("Railroad") on April 20, 1987. One month later, Penn Central conveyed to the Railroad by quitclaim deed all its rights and interests in the land, premises, easements, and rights-of-way used in conjunction with its railroad, including that portion crossing Container's land. Furthermore, the quitclaim expressly stated that Penn Central conveyed to the Railroad all of its rights and obligations under any sidetrack agreements.
 
 
 4
 On December 30, 1988, the Railroad sent written notice to Container of its intent to terminate all rail operations to Container, indicating that it would start removing the track sometime after January 20, 1989. On April 20, 1989, Railroad again notified Container of its intent to terminate Container's rail service, which it did on May 23, 1989. In June 1990, the tracks crossing Main Street in Carthage, Indiana, were removed, rendering the tracks on Container's property useless because they were not connected to any other rail. Finally, in December 1991, Container hired William Richey Demolition, Inc. to remove the tracks and related equipment from its property.
 
 
 5
 On January 29, 1994, the Railroad brought suit against Container and the Jefferson Smurfit Corporation.[1] Count One of the complaint alleged conversion and sought the replacement value of the tracks and equipment (allegedly $60,000, although Container sold the tracks for only $700), plus treble damages, attorneys' fees and costs pursuant to Indiana Code 34-4-30-1. Count Two alleged that Container's removal of the track was a breach of the Agreement. The district court granted summary judgment to Container on both counts. We agree with the district court that the Railroad's claims must fail and that summary judgment for Container was proper.
 
 
 6
 Indiana applies a two-year statute of limitations to conversion claims. French v. Hickman Moving & Storage, 400 N.E.2d 1384, 1388 (Ind.Ct.App.1980). The Railroad admits that by January 14, 1992, it knew Container had removed the tracks from its premises and that they had been sold. Because the Railroad did not file a complaint until January 28, 1994, its claim is barred. However, the Railroad argues that the statute of limitations should be equitably tolled until January 29, 1994, based upon the following alleged conversation. The Railroad contends that when it heard on January 14, 1992, that Container had removed the tracks, Mr. Allison, a vice president of the Railroad, immediately visited Container's plant to inquire about the removal. While there, a plant employee allegedly examined a company file, stated that "[i]t looks like the rail is yours," and indicated that Mr. Allison should not do anything until the plant manager returned to the office on January 29, 1992. These employee statements, argues the Railroad, require that the statute of limitations be tolled from January 14, 1992, to January 29, 1992, thus extending the period within which it had to file its claim by two weeks. The Railroad's argument is incorrect.
 
 
 7
 First, there is no indication that this plant employee had any authority to speak on behalf of Container. But even if the employee did have the authority to speak on Container's behalf, his statements would still not be a proper basis for the equitable tolling doctrine. The doctrine of equitable tolling aids a plaintiff who, "because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time." Miller v. Runyon, 77 F.3d 189, 191 (7th Cir.1996). It does not simply add a week or two to the statute's expiration based upon conversations that took place years before. Even if we concluded that based upon the employee statements, the Railroad waited until January 29, 1992, to begin seeking relief for its alleged injury, it still had one year and fifty weeks before the statute ran. It did not file within the statutory period, and its claim is barred.
 
 
 8
 But regardless of the statute of limitations, the Railroad's claim would still fail on the merits. In a conversion action in Indiana, a plaintiff must establish an unqualified right to possession of the property based upon a superior claim of title. Noble v. Moistner, 388 N.E.2d 620, 621 (Ind.Ct.App.1979). The record shows that the Railroad fails to meet this requirement. The district court correctly found that the chain of title to the tracks demonstrated that they were not owned by Container, but were only on its property because of an easement arrangement that was documented in the Agreement between Penn Central and Container. Thus the Railroad became the true owner of the tracks when it purchased, through the 1987 quitclaim deed, Penn Central's interests in all sidetrack agreements.
 
 
 9
 However, as owner of the tracks, the Railroad was now bound to certain obligations contained in the Agreement. Specifically, upon written termination, both parties had only thirty days to remove their property from the premises of the other. Given this provision, the Railroad had thirty days from its first termination notice in December 1988 either to remove its property or forfeit its interests therein. It not only failed to remove the tracks within that period, but had still not done so three years later. Therefore, at the time Container removed the tracks from its premises, title had already passed from the Railroad to Container and Railroad's conversion action fails.
 
 
 10
 The Railroad argues that this result is incorrect for several reasons. First, it argues that its letters, although clearly expressing a desire to terminate its use of the tracks, did not reference the Agreement, and thus did not trigger the thirty day termination provision. Reference to the Agreement, however, was not a termination requirement. The only requirement for termination was written notice of an intent to end the easement arrangement. The Railroad's letters easily met this standard.
 
 
 11
 Second, the Railroad claims that Container waived the termination provision by not objecting to past interruptions in rail service by prior owners. This argument is unpersuasive because there is no evidence that the prior interruptions involved situations where the owners specifically indicated a desire to terminate the easement relationship, as opposed to merely placing service on hold.
 
 
 12
 Finally, the Railroad argues that it should not be bound by the Agreement's termination provision because the Agreement was not recorded. Recording has no effect on this case. The Railroad took its interest in the tracks directly from its transaction with Penn Central. The documents evidencing that transaction refer specifically to Penn Central's conveyance of interests and obligations in side track agreements. Thus the Railroad was on notice of the Agreement, despite that it was unrecorded. Furthermore, it would be highly inconsistent to permit the Railroad to use the Agreement as evidence of its original ownership of the tracks, but then to allow the Railroad to successfully claim ignorance of the document for purposes of the termination provision. The Railroad must accept both the benefits and the obligations of the Agreement.
 
 
 13
 The Railroad's breach of contract claim fails as well. Container was well within its rights under the agreement to remove the tracks from its premises after the thirty day period expired. As we stated above, Container not only waited thirty days, it waited over three years. The district court's grant of summary judgment to Container is affirmed.
 
 
 
 [1]
 The only references to defendant Jefferson Smurfit Corporation are (1) a January 19, 1994, letter on its and Container's letterhead advising the Railroad that Container was justified in removing the rails by a Private Side Track Agreement between it and Penn Central; and (2) a January 6, 1991, letter on the same joint letterhead selling the rails to Rickey Demolition, Inc. for $700